# **Stueve · Siegel · Hanson**

LLP

**Todd E. Hilton**
hilton@stuevesiegel.com

460 Nichols Road, Suite 200
Kansas City, Missouri 64112

Phone: (816) 714-7118
Fax:  (816) 714-7101

February 24, 2017

Mohit Khera
Baylor College of Medicine, Scott Department of Urology
7200 Cambridge, Suite 10B
Houston, TX 77030

**Re:** **In Re: Testosterone Replacement Therapy Products Liability Litigation, Case    No. 14 C 1748, MDL 2545, United States District Court for the Northern District of Illinois**

Dear Dr. Khera:

Attached is a document subpoena directed at you in connection with the case styled as *In Re: Testosterone Replacement Therapy Products Liability Litigation*, Case No. 14 C 1748, MDL 2545, currently pending in United States District Court for the Northern District of Illinois. Also attached is a subpoena to testify at a deposition in this case. These subpoenas are served on behalf of the Plaintiff's Steering Committee (PSC) in that case. The Court appointed the PSC to represent the interests of all plaintiffs with cases pending in the MDL.

Under the terms of the attached document subpoena, you are commanded to produce at the time, date, and place set forth in the subpoena the documents set forth in Exhibit A to the subpoena. Alternatively, you may produce the documents electronically to us. Also attached is a Certificate of Authenticity for you to complete.

Also attached is a copy of the protective order that the Court has entered in this case. That protective order may apply to documents that you produce and may be used to protect the confidentiality of documents that you produce. We agree to abide by the terms of that agreement with respect to documents you produce.

Under the terms of the attached subpoena to testify at a deposition, you are commanded to appear at the time, date and place set forth on the subpoena to testify. We have tendered with this subpoena the required fees and expenses for a 1-day appearance.

If you have any questions, please call me at 816-714-7118 or e-mail me at Hilton@stuevesiegel.com.

Thank you for your prompt attention to these subpoenas.

Very truly yours,

*Todd E. Hilton*

Todd E. Hilton

Enclosures

Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Illinois

| | |
|---|---|
| In Re: Testosterone Replacement Therapy Products Liability Litigation | ) |
| _Plaintiff_ | ) |
| v. | )     Civil Action No.    1:14-cv-01748 and MDL No. 2545 |
| | ) |
| _Defendant_ | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Mohit Khera, MD, c/o Custodian of Records, Baylor College of Medicine, Scott Department of Urology
7200 Cambridge, Suite 10B, Houston, TX 77030

_(Name of person to whom this subpoena is directed)_

   ☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A

| Place: Robins Cloud LLP | Date and Time: |
|---|---|
| 2000 West Loop South, Suite 2200 | |
| Houston, Texas 77027 | 03/24/2017 9:00 am |

   ☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/24/2017

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | /s/ Todd E. Hilton |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_
Plaintiff James Weimers, et al.          , who issues or requests this subpoena, are:

Todd E. Hilton, Stueve Siegel Hanson LLP, 460 Nichols Rd., Ste. 200, Kansas City, MO 64112, (816) 714-7100

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:14-cv-01748 and MDL No. 2545

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*

                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.
  **(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit A

## Exhibit A

**Form of Production for Electronically Stored Information (ESI)**

A. <u>**DEFINITIONS**</u>

1. **"Metadata"** means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

2. **"Native Format"** means and refers to the format of ESI in which it was generated or as it is ordinarily maintained by the Producing Party in the usual course of its business and in its regularly conducted activities.

3. **"Static Image(s)"** means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

4. **"OCR"** means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

5. **"Extracted Text"** means the text extracted from a Native File and includes all header, footer and document body information.

B. <u>**PRODUCTION**</u>

1. **ESI Production Format.** The following provisions shall generally govern the production format and procedure for ESI and are subject to the other provisions contained herein.

   a. **Production of Certain Files in Native Format.** Excel spreadsheets and audio and video files shall be produced in their native format unless redacted. Native files will be accompanied by load and metadata files containing the fields identified below, including confidentiality designations.

Exhibit A

b.   **Production of Other ESI in TIFF.**  Other ESI (e.g., emails, word processing files, and presentation files) shall be produced in .tif format.  ESI shall be produced in black-and-white, single page, 300 DPI, Group IV*.tif images with affiliated metadata as identified below.  The Parties will accommodate reasonable requests for production of specific images in color. The Parties will meet and confer in good faith to determine the nature and extent of objective coding which may be captured or created by Producing Party's collection or review processes or platforms, and whether any such information will be produced to Plaintiffs.

c.   Any productions made in TIFF will include these additional specifications:

- a load file for images;

- a delimited load file (.dat) containing a field with the full path and filename to native files produced and the metadata fields identified in the attached Exhibit A (for ESI);

- document level .txt files for all native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

- Bates number branding and appropriate Confidentiality designations (if any) on the face of the image.

d.   **Image Load File Requirements.** In general, image load files will meet these requirements. The Parties agree to meet and confer further if meeting these requirements is not reasonably possible.

- Every Document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

- Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

Exhibit A

- The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt or .dii* extension (e.g., ABC001.lfp). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.)  *If .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.

- The load file shall contain one row per Tiff image.

- Every image in the delivery volume shall be contained in the image load file.

The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

e.  **Metadata Load File Requirements.** In general, metadata load files will meet these requirements. The Parties agree to meet and confer further if meeting these requirements is not reasonably possible.

- The metadata load file shall use the following delimiters:

    - Column Delimiter: Pipe – | (ASCII 124)

    - Text Qualifier: Caret – ^ (ASCII 94)

    - New line: Registered sign - ® (ASCII 174)

- Data for each document shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

- The first record shall contain the field names in the order of the data set forth below. Metadata fields that are not applicable to a document shall be filled with a NULL value along with fields that were not able to be obtained due to a processing error or corrupt file.

- All date fields shall be produced in "mm/dd/yyyy  hh:mm:ss AM" format, to the extent available.

- A carriage-return line-feed shall be used to indicate the start of the next record.

- A carriage-return line-feed shall be used to indicate the start

3

Exhibit A

of the next record.

- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (i.e., ABC001.dat).

- The volume names shall be consecutive for each produced source. (i.e., ABC001, ABC002, et. seq.).

f.   **Embedded Objects**. Objects embedded in Microsoft Word, .rtf, Powerpoint or Excel will be extracted as separate documents and produced as attachments to the document.

g.   **Compressed Files**. Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

h.   **Dynamic Fields**. The Parties will meet and confer about the possibility of forcing off dynamic fields such as AutoDate.

i.   **Appearance and Content**. No document may be intentionally manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file, without prior agreement of the Receiving Party. Therefore, subject to any appropriate redaction, each document's electronic image shall convey the same information and image as the original document.

j.   **Document Numbering for TIFF Images**. Each page of a document produced as TIFF images shall have a legible, unique Bates Number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document. The Bates Number for each document shall be created so as to identify the Producing Party and the Bates Number. Each Party shall have a unique identifying name. Each page of each production shall have a unique number of up to eight digits. The unused digits of the unique number shall be filled with placeholder zeros (0) to facilitate electronic sorting of the documents.  The Bates number will (i) be consistent across the production; (ii) contain no special characters; and (iii) be numerically sequential within a given document. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  If a number or set of numbers is skipped in a production, and not otherwise identified on a privilege log, the producing party will disclose those numbers or ranges in a cover

4

Exhibit A

letter accompanying the production.

k.    **Replacement Files.** Any documents that are replaced in later productions shall be clearly designated as such, by appending a "-R" to the production prefix and by a letter accompanying the production clearly designating such documents as replacements.

l.    **Production Media.** The Producing Party shall produce documents on readily accessible, computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, external hard drive (with standard PC compatible interface or access to a secure On-Line Repository agreed upon by the Parties) or via secure FTP site. Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production. The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates number the documents produced.

m.    **Redactions.** To the extent that a document is produced in redacted form or with redacted metadata, the Parties will meet and confer on whether a metadata field will provide sufficient information such that a redaction log and suppressed metadata log may not be necessary. Redactions in general are addressed in the Protective Order.

n.    **Database Records.** To the extent that any Party requests information that is stored in a database or database management system, the Parties will meet and confer regarding the accessibility of such information and the format of production.

o.    **Non-Standard Files.** Parties will meet and confer with regard to the treatment of non-standard electronic files, include, but are not limited to, source code, transactional data, database files, and proprietary applications not publicly available.

p.    **Exceptions.** With each production, the Producing Party shall identify any potentially relevant ESI which could not be produced and/or imaged because of technical issues: for example, corruption, unavailable password protection, proprietary software, etc. The Parties will meet and confer on a reasonable and cost-effective means of further investigating and resolving the technical issues.

q.    **Time Zone.** Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Eastern Time. The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded

Exhibit A

text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with the load file formats, below.

2. **Confidentiality of Produced ESI.** Responsive ESI, whether produced as TIFF images or in Native Format, shall be produced pursuant to the terms of the Stipulated Discovery Confidentiality Order. Any objections to production shall be made pursuant to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. If a document is produced subject to a claim that it is protected from disclosure under the Stipulated Discovery Confidentiality Order, the word "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY" shall be burned electronically on each page of such document.

3. **Encryption.** To maximize the security of information in transit, any media on which documents are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

C.   **MISCELLANEOUS**

1   **English Language.** To the extent any Data exists in more than one language, the Data shall be produced in English, if available. If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of a document.

2   **Variance.** Any practice or procedure set forth herein may be varied by written agreement of the Parties.

D.   **FIELDS AND METADATA TO BE PRODUCED**

| Field<br>(to the extent available and/or unredacted) | Data Type<br>(to the extent available and/or unredacted) | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|---|
| BegDoc | Fixed Length Text | Start Bates | Start Bates |
| EndDoc | Fixed Length Text | End Bates | End Bates |
| BegAttach | Fixed Length Text | Starting Bates number of document family | Starting Bates number of document family |
| ParentID | Fixed Length Text | Starting Bates number of document family | Starting Bates number of document family |
| EndAttach | Fixed Length Text | Ending Bates number of document family | Ending Bates number of document family |
| Attachment IDs | Fixed Length Text | Beginning number for each child | Ending Bates number of document family |
| Author | Long Text | Document author from metadata | |

Exhibit A

| Field (to the extent available and/or unredacted) | Data Type (to the extent available and/or unredacted) | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|---|
| LastSavedBy | Long Text | Contents of this metadata field from application metadata, or an equivalent (if any) | |
| From | Long Text | | Contents of this metadata field, or an equivalent |
| To | Long Text | | Contents of this metadata field, or an equivalent |
| CC | Long Text | | Contents of this metadata field, or an equivalent |
| BCC | Long Text | | Contents of this metadata field, or an equivalent |
| Subject | Long Text | | Contents of this metadata field, or an equivalent |
| Title | Long Text | Title from a documents' properties | |
| SentDate | Fixed Length Text (mm/dd/yyyy) | | Sent date of the email |
| SentTime | Fixed Length Text (hh:mm AM/PM) | | Sent time of the email |
| ReceivedDate | Fixed Length Text (mm/dd/yyyy) | | Received date of the email |
| ReceivedTime | Fixed Length Text (hh:mm AM/PM) | | Received time of the email |
| TimeZone | Fixed Length Text (PST, MST, CST, EST, GMT) | Time zone used for processing | Time zone used for processing |
| ModDate | Fixed Length Text (mm/dd/yyyy) | Contents of this metadata field, or an equivalent | |
| ModTime | Fixed Length Text (hh:mm AM/PM) | Contents of this metadata field, or an equivalent | |
| CreateDate | Fixed Length Text (mm/dd/yyyy) | Contents of this metadata field, or an equivalent | |
| CreateTime | Fixed Length Text (hh:mm AM/PM) | Contents of this metadata field, or an equivalent | |

Exhibit A

| Field (to the extent available and/or unredacted) | Data Type (to the extent available and/or unredacted) | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|---|
| NativeLink | Fixed Long Text | Link to the native file (if any) | Link to the native file (if any) |
| FileName | Long Text | Contents of the "File name" metadata field | Contents of the "File name" metadata field |
| FilePath | Long Text | File path of the document, excluding file name | |
| Custodian | Long Text | Custodian designation where appropriate | Custodian designation where appropriate |
| AttachCount | Whole Number | | Number of attachments of a given parent document (only populated for parent documents) |
| FileSize | Whole Number | Size of the file in bytes | Size of the file in bytes |
| FileExt | Fixed Length Text | File extension | File extension |
| MD5Hash | Fixed Length Text | MD5 hash of the document | MD5 has of the email |
| Conversation_Index | Long Text | | Value assigned to a conversation by the Exchange server |
| RevisionNo | Fixed Length Text | "Revision number" from application metadata (if any) | |
| PgCount | Whole Number | Number of pages (TIFF documents only) | Number of pages (TIFF documents only) |
| Extracted Text | Long Text | Path to the body text file for the document | Path to the body text file for the document |
| Dupe_Custodians | Long Text | All/other custodians of a de-duplicated document (if applicable) | All/other custodians of a de-duplicated document (if applicable) |
| Exceptions | Fixed Length Text | Produced document that cannot be processed (filed to be populated with "Yes") | Produced email or attachments that cannot be processed (field to be populated with "Yes") |
| Confidentiality | Fixed Length Text | Documents' designated confidentiality | Documents' designated confidentiality |

Exhibit A

## DEFINITIONS

The following definitions apply to each of the requests for documents set forth herein and are deemed to be incorporated in each of said requests:

1.    "Document" means paper and electronic writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained and translated through electronic means. If a document was prepared in several copies or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of notation or modification of any kind whatsoever, including notations on the front or back of any pages thereof, then each such copy must be produced. Consistent with the above definition, the term "document" shall include, without limitation, any computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether composed of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof.

2.    "TRT products" is used to refer to any and all testosterone replacement therapy products, Including, without limitation, the following TRT products: AndroGel, Testim, Axiron, Depo-Testosterone, Androderm, Testopel, Fortesta, Striant, Delatestryl, or others including any and all formulations, versions, modifications, successors and predecessors, whether or not developed into a complete or final product or sold to the public.

3.    The term "you" and "your" shall mean the person to which this subpoena is directed and shall also include your subsidiaries, affiliates, parents, members, partners,

9

Exhibit A

directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including all foreign subsidiaries, affiliates and parent companies, as well as any foreign subsidiaries' or parent companies' members, partners, directors, officers, employees, servants, agents, attorneys, joint ventures or other representatives, and any of their respective predecessor entities.

4. The terms "relating to," "relate to," "relating," "referring to," "refer to," "concerning" or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

5. "Person" means natural persons, proprietorships, joint ventures, partnerships, corporations, trusts, groups, associations, organizations, governmental agencies, and all other entities.

6. "Communication" shall mean and refer to any oral, written, spoken or electronic transmission of information, including, but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between any person or entity.

7. "Identify" or "identity" with respect to natural persons or entities, means to give, to the extent known, the person's full name and present or last known address and telephone numbers, and when referring to a natural person, additionally, the present or last know place of employment.

8. "Study" includes any research, analysis or examination, inspection or investigation (including, but not limited to, clinical investigations) or other activity by

Exhibit A

which data or information is acquired for the purpose of analysis or understanding. The term is intended to include studies which have been completed and studies which are still in progress regardless of whether such activity took place within or without the United States. It should include information and data acquired from such study regardless of the stated or original purpose of the study.

9.     "Test" includes any kind of examination, experiment, scientific analysis or other inquiry or undertaking seeking to develop or acquire information or data. It should include information and data acquired from such tests regardless of the stated or original purpose of the test. The term is intended to include tests which have been completed and tests which are still in progress regardless of whether such activity took place within or without the United States. The term "test" is often used in conjunction with the term "study" defined herein. A request for information concerning a test or study should be construed as including the following documents: the protocol for the conduct of the test/study, a statement of the  conditions under which the test/study was intended to be conducted, a statement of the conditions under which the test/study was actually conducted, documents requesting that the test/study be performed, documents ordering that the test/study be performed, documents containing the original raw test/study data, documents containing the written test/study report and all attachments thereto, documents containing the test/study specifications, including the pass-fail criteria, any summary, abstract, analysis, compilation, including evaluation or interpretation of the test/study and all investigators or entities, universities and/or laboratories involved in the testing.

Exhibit A

10. "Foreign regulatory body" means any organization, including, but not limited to, the regulatory bodies, in any country (or other jurisdictional entity such as the European Union) other than the United States that regulates pharmaceutical drugs, including but not limited to such organizations in Japan, Canada (Health Canada), Australia (TGA), the United Kingdom (MDA/MHRA) and any other Competent Authority or other entity within the European Union (including EMA) that is involved in the regulation of pharmaceutical drugs such as TRT products.

11. "Auxilium" means Auxilium Pharmaceuticals, Inc., and any of its subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, officers, directors, employees, representatives, independent contractors, members, or agents.

12. "TRIUS" means Testim Registry in the United States, a Phase IV clinical trial designated AUX-TG-225 by Auxilium, and all related studies, articles, reports, drafts, communications, exchanges, notes, memoranda, correspondence, publications, and materials.

13. Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients, or other representatives of affiliated third parties.

14. The connectives "and" and "or" mean either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15. The use of the singular includes the plural and vice versa.

16. "Any" is understood to include and encompass "all." The words "any" and "all" also include "each" and vice versa.

12

**Exhibit A**

17.     Use of the phrase "United States Food and Drug Administration," "National Institutes of Health," or reference to any Federal agency or agencies includes agencies or divisions of all state and local political subdivisions as well as the foreign equivalents of Federal, state or local agencies including but not limited to all foreign regulatory bodies, foreign governments or agencies thereof including but not limited to the European Union Committee for Proprietary Medicinal Products (CPMP), the United Kingdom's Medicines Control Agency (MCA), France, Canada, Ireland, Australia and Japan.

### INSTRUCTIONS

1.      All documents shall be produced that respond to any part, clause, or sentence of any paragraph of these requests.

2.      The documents to be produced pursuant to these requests specifically embrace, in addition to documents within your possession, custody or control, documents within the possession, custody or control of any of your agents, accountants, representatives or attorneys.  Such documents also embrace originals, and identical copies (whether different from the original because of notes made thereon or otherwise) of the documents described in these requests.

3.      You shall produce all documents in a form which renders the documents susceptible to copying either by photocopy or otherwise.

4.      Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

5.      Privilege/Redaction Log.  If any documents are within the scope of any request for production but are not being produced or are being produced with portions redacted, pursuant to any claim of privilege or confidentiality:

Exhibit A

a. State the nature of the privilege claimed (e.g., attorney-client work product, etc.)

b. State the name of the person or entity claiming privilege and the name of the attorney, if any, with respect to whom the privilege is claimed;

c. State the facts upon which you rely as the basis for claiming any privilege as to the specific information or document; and

d. State the name of such document; identify the type of document (e.g., letter, memo, etc.); set forth the subject matter thereof; identify the person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated or shown; and identify each person now in possession of the document. If any document is produced in redacted form, the word "redacted" is to be placed in the redacted section of the document.

6.      Destruction Log. In the event that any document called for by these requests has been destroyed or discarded, that document is to be identified by stating:

a. the nature of the document;

b. any addressor or addressee;

c. any indicated or blind copies;

d. the document's date, subject matter, number of pages, and attachments or appendices;

e. all persons to whom the document was distributed, shown or explained;

f. its date of destruction or discard, manner of destruction or discard;

14

Exhibit A

and

    g.   the persons authorizing or carrying out such destruction or discard.

7.     The following document demand is continuing in nature and in the event you become aware of or acquire additional documents responsive hereto, such additional documents are to be promptly produced.

8.     If you are unable to comply fully with any of the specific requests, you shall comply with the extent possible and provide an explanation as to why full compliance is not possible.

9.     Documents are to be produced in their full and unexpurgated form. Redacted documents shall not constitute compliance with these requests, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 5 above.

10.    Unless otherwise indicated, all documents requested pertain to the time period from January 1, 1999 to present.

### DOCUMENTS TO BE PRODUCED

1.     A copy of your full, complete, and current *curriculum vitae*.

2.     Any and all documents, memoranda, agreements, communications, memorializations, letters, grant proposals, contracts, and proposals prepared by any individual or entity (including yourself or Auxilium) and whether or not exchanged between you and Auxilium, which relate to, pertain to, or otherwise discuss or describe any and all professional services rendered by you, or proposed to be rendered by you, to Auxilium relating to testosterone products including but not limited to those marketed and sold by Auxilium.

15

Exhibit A

3.     Any and all documents, memoranda, agreements, communications, memorializations, presentations, slides, slide decks, manuscripts, monographs, video or audio recordings, letters, grant proposals, contracts, and proposals prepared by any individual or entity (including yourself or Auxilium), whether or not exchanged between you and Auxilium, which relate to, pertain to, or otherwise discuss or describe any and all professional services rendered by you, or proposed to be rendered by you, to, for, or on behalf of Auxilium with respect to:

a.     The education and training of Auxilium personnel, including employees, officers, directors, agents, vendors and contractors, regarding, relating to, or otherwise pertaining to testosterone, hypogonadism, testosterone deficiency, the indications and use for testosterone therapy, the complications and adverse events associated with or caused by testosterone administration to men, and the hypothalamic-pituitary-testicular axis and its regulation;

b.     The provision of services as a Key Opinion Leader (KOL), or Opinion and Thought Leader (OTL), member Auxilium's Speakers Bureau, or educator of healthcare providers performed for or on behalf of Auxilium regarding, relating to, or otherwise pertaining to testosterone, hypogonadism, testosterone deficiency, the indications and use for testosterone therapy, the complications and adverse events associated with or caused by testosterone administration to men, and the hypothalamic-pituitary-testicular axis and its regulation;

16

Exhibit A

c.  Any and all work as a consultant, or in the provision of consulting or consultative services, for, or on behalf of, Auxilium regarding, relating to, or otherwise pertaining to testosterone, hypogonadism, testosterone deficiency, the indications and use for testosterone therapy, the complications and adverse events associated with or caused by testosterone administration to men, and the hypothalamic-pituitary-testicular axis and its regulation;

d.  The provision or proposed provision of any and all Investigator Initiated Studies or Investigator Initiated Trials for, on behalf or, or with support from Auxilium in which you were or were proposed to be an investigator or consultant;

e.  The submission for and publications of any articles, journals, entries, reports, analysis, opinion pieces, papers, abstracts, or other works, for, at the request of, with, or on behalf of Auxilium;

f.  The provision of or participation in Continuing Medical Education (CME) programs, conferences, and presentations on topics or subjects regarding, relating to, or otherwise pertaining to testosterone, hypogonadism, testosterone deficiency, the indications and use for testosterone therapy, the complications and adverse events associated with or caused by testosterone administration to men, and the hypothalamic-pituitary-testicular axis and its regulation which were funded in whole or in part by Auxilium;

17

Exhibit A

g.   The preparation or presentation of any speeches, talks, presentations, discussions, educational materials at a medical professional society or profession medical organization conference or meeting on topics or subjects regarding, relating to, or otherwise pertaining to testosterone, hypogonadism, testosterone deficiency, the indications and use for testosterone therapy, the complications and adverse events associated with or caused by testosterone administration to men, and the hypothalamic-pituitary-testicular axis and its regulation which were funded in whole or in part by Auxilium or which were performed for or on behalf of Auxilium;

h.   Services provided to or as a member of any Advisory Board, Scientific Advisory Board, advisory committee, advisory conference, scientific meeting, or scientific or marketing meeting within, for, or on behalf of Auxilium on topics or subjects regarding, relating to, or otherwise pertaining to testosterone, hypogonadism, testosterone deficiency, the indications and use for testosterone therapy, the complications and adverse events associated with or caused by testosterone administration to men, and the hypothalamic-pituitary-testicular axis and its regulation;

4.   Any and all documents, correspondence, materials, data, Institutional Review Board documentation, study protocols, consent forms, statistical analyses, journal submissions and correspondence, analysis and commentary of submitted TRiUS manuscripts by peer reviewers and/or journal editors, analysis and commentary of TRIUS

18

Exhibit A

manuscripts by any other internal (within Auxilium) or external (outside of Auxilium) reviewers, draft manuscripts with any and all track changes and comments, which relate to, pertain to, or otherwise referencing, discussing, or describing TRIUS.

5.      Any and all correspondence, documents, or materials sent by yourself to Auxilium or sent from Auxilium personnel to you pertaining to, relating to, or otherwise discussing or referencing the September 17, 2014 FDA Joint Meeting of the Bone, Reproductive and Urologic Drugs Advisory Committee and the Drug Safety and Risk Management Advisory Committee Joint Advisory Committee ["FDA Joint Advisory Committee"], the preparation for the September 17, 2014 FDA Joint Advisory Committee meeting, an analysis of the subjects and topics relating to the September 17, 2014 Joint Advisory Committee meeting, or any of the briefing documents that were prepared for September 17, 2014 FDA Joint Advisory Committee meeting.

6.      Any correspondence with any member of the FDA Joint Advisory Committee meeting that occurred after September 17, 2014 pertaining to, relating to, or otherwise referencing the discussions, results, slide presentations, briefing documents, data, conclusions, and opinions expressed by all participants and speakers at the meeting.

7.      Any and all correspondence, discussions, information exchanges, documents, and materials with the Publication Steering Committee at Auxilium regarding planned, proposed, written, outlined, or described publications on the topic of testosterone or testosterone therapy.

8.      All documents relating to any Auxilium Advisory Board or Advisory Committee at Auxilium of which you were a member or sat upon, including without

Exhibit A

limitation, meeting minutes, presentations, memoranda, communications – both written and electronic, outlines, talking points, videos, contracts and agreements.

9.      All documents relating to any Auxilium committee or board which included Auxilium personnel, officers, directors, employees or agents, of which you were a member or participant, including without limitation, meeting minutes, presentations, talking points, outlines, attendance lists, memoranda, communications – both written and electronic, contracts and agreements.

10.      All documents and recordings relating to any video or digital recording on which you appear at the request of, on behalf of, in furtherance of, in conjunction with, or for Auxilium, including without limitation, DVD, other digital media, outlines, scripts, transcripts, talking points, drafts, exhibits, memoranda, communications – both written and electronic, presentations, interviews, feedback and contracts.

11.      Any and all documents, memoranda, agreements, communications, notes, memorializations, and contracts between you and any agent, employee or consultant for Auxilium (or any of its affiliates, agents or representatives), including but not limited to documents relating to the potential risks, benefits, guidelines and/or indications for Auxilium's TRT products.

12.      Any and all documents, memoranda, agreements, communications, notes, memorializations, and contracts with any federal or state regulatory agencies, including but not limited to the United States Food and Drug Administration and the National Institutes of Health referring or relating to Auxilium's TRT products.

Exhibit A

13.     Any and all meeting minutes or other documents that purport to memorialize the conduct or substance of any meeting which refers or relates to Auxilium's TRT products, including potential risks and potential benefits.

14.     Any and all documents identifying the attendees of any meetings referring or relating to TRT products.

15.     Any and all documents, memoranda, agreements, communications, notes, memorializations, and contracts between you and any media entity referring or relating to Auxilium, or its TRT products.

16.     Any and all documents, memoranda, agreements, communications, notes, memorializations, and contracts referring or relating to any advertisement, promotion, sales, or marketing for Auxilium's TRT products.

Exhibit A

## CERTIFICATION OF AUTHENTICITY

BEFORE ME, the Undersigned Notary, personally came and appeared:

_____, after being duly sworn did depose and

state the following under oath:

1.  My name is _____. I am the records custodian for
    Mohit Khera.

2.  I have personal knowledge of the records that Mohit Khera maintains.

3.  This Certification of Authenticity verifies that Mohit Khera has produced all
    documents in his possession responsive to the subpoena *duces tecum* propounded
    by the Plaintiffs' Steering Committee in the matter of *In Re:Testosterone
    Replacement Therapy Products Liability Litigation,* Case No. 14 C 1748, MDL
    2545 in the United States District Court for the Northern District of Illinois.

4.  The documents that Mohit Khera has produced in response to the subpoena *duces
    tecum* propounded on him by the Plaintiffs' Steering Committee in the matter of
    *In Re:Testosterone Replacement Therapy Products Liability Litigation,* Case No.
    14 C 1748, MDL 2545 are true, accurate and complete copies of all documents
    maintained by Mohit Khera

5.  The documents that Mohit Khera has produced in response to the subpoena *duces
    tecum* propounded on him by the Plaintiffs' Steering Committee in the matter of
    *In Re:Testosterone Replacement Therapy Products Liability Litigation,* Case No.
    14 C 1748, MDL 2545 were made at or near the time by – or from information
    transmitted by – someone with knowledge.

6.  The documents that Mohit Khera has produced in response to the subpoena *duces
    tecum* propounded on him by the Plaintiffs' Steering Committee in the matter of
    *In Re:Testosterone Replacement Therapy Products Liability Litigation,* Case No.
    14 C 1748, MDL 2545 have been kept in the course of regularly conducted
    activity of Mohit Khera

Exhibit A

7. The making of the documents that Mohit Khera has produced in response to the subpoena *duces tecum* propounded on him by the Plaintiffs' Steering Committee in the matter of *In Re:Testosterone Replacement Therapy Products Liability Litigation,* Case No. 14 C 1748, MDL 2545 was a regular practice of that person or business.

8. Mohit Khera has no other documents that are responsive to the subpoena *duces tecum* served by the Plaintiffs' Steering Committee in the matter of *In Re:Testosterone Replacement Therapy Products Liability Litigation,* Case No. 14 C 1748, MDL 2545.


_____
SIGNATURE
Mohit Khera
Custodian of Records


Sworn to and subscribed before me this
_____day of_____, 2017.


_____
Notary Public

[Notary Seal]


My Commission Expires:

_____

2

Exhibit A

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | | |
|---|---|---|
| In Re: Testosterone Replacement Therapy Products | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:14-cv-01748 and MDL No. 2545 |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      Mokit Khera, MD, Baylor College of Medicine, Scott Department of Urology
7200 Cambridge, Suite 10B, Houston, TX 77030

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:   Robins Cloud LLP | Date and Time: |
|---|---|
| 2000 West Loop South, Suite 2200 Houston, Texas 77027 | 04/04/2017 9:00 am |

The deposition will be recorded by this method:     Court Reporter and Videographer

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     02/24/2017

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Todd E. Hilton |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Plaintiff James Weimers, et al.                                                  , who issues or requests this subpoena, are:

Todd E. Hilton, Stueve Siegel Hanson LLP, 460 Nichols Rd., Ste. 200, Kansas City, MO 64112, (816) 714-7100

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit A

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:14-cv-01748 and MDL No. 2545

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Exhibit A

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
    **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | ) ) ) ) | Case No. 14 C 1748 MDL No. 2545 |
| This document relates to all cases | ) | Judge Matthew F. Kennelly |

## CASE MANAGEMENT ORDER # 8
## (PROTECTIVE ORDER)

This matter comes before this Court pursuant to Fed. R. Civ. P. 26(c) and Northern District of Illinois Local Rule 26.2, on the parties' Motion for a Proposed Protective Order.

WHEREAS, the requests for discovery in this case may encompass documents or information that may reveal trade secrets, confidential business information, other proprietary information, or personal information;

WHEREAS, the requests for discovery in this case may encompass documents or information that are protected from disclosure by the attorney-client privilege, attorney work product, or by any other privilege;

WHEREAS, the Parties as defined herein seek a protective order limiting the disclosure thereof in accordance with Fed. R. Civ. P. 26(c);

THEREFORE, FOR GOOD CAUSE SHOWN, IT IS HEREBY ORDERED that the following Stipulated Protective Order governs confidential or privileged documents in this consolidated litigation:

Exhibit A

1.    Definitions:

a.    "Defendant" means any named Defendant who has been named and appeared in *In re: Testosterone Replacement Therapy Products Liability Litigation* (MDL No. 2545), 14 C 1748.

b.    "Litigation" or "*Testosterone Litigation*" means any litigation against Defendants that involve claims that testosterone replacement therapy caused or causes cardiovascular, clotting or stroke events, regardless of where such claims are pending. In the event that the Judicial Panel on Multidistrict Litigation ("JPML") assigns to this MDL cases alleging different injuries from those above, those cases shall be included in this definition.

c.    "Action" means a particular lawsuit in the Litigation commenced by a Plaintiff or Plaintiffs against any Defendant subject to this Order.

d.    "Party" means any Party to an Action, including all of its officers, directors, employees, and outside counsel (and their support staff). To the extent that any Party produces Confidential Information in this Action from its consultants, independent contractors, parents, subsidiaries or affiliates, the Confidential Information shall receive the same protections under this Order as if produced by the Party.

e.    "Producing Party" means a Party or non-party that produces Confidential Information in this Action. Any non-party that produces Confidential Information in this Action, pursuant to subpoena, Order, or otherwise, shall be deemed a Producing Party for the purposes of this Order. To the extent that any Party has an interest in maintaining the confidentiality of Confidential Information produced by any

Exhibit A

non-party, that Party may designate such as "Confidential" as if it was a Producing Party pursuant to this Order.

f.    "Receiving Party" means a Party that receives Confidential Information from a Producing Party.

g.    The term "Person" means any natural person, corporation, partnership, sole proprietorship, group, association, organization, business entity, governmental body, or agency.

h.    The term "Confidential" and "Confidential Information" means any information so designated by any Producing Party (as defined herein) that it reasonably and in good faith believes is of the type protectable under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure or is required to be kept confidential by law or by agreement with a third party or otherwise.  As used in the Order, the term "Confidential" means information designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" by the Producing Party that falls within those categories set forth in Paragraph 3, including: (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, regulatory, commercial or financial information that the Party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a Person who is not a Party to the case.  Information that is available to the public may not be designated as "Confidential."

Material produced or disclosed that is subject to designation as "Confidential" pursuant to this Order includes any document, including, without limitation, any writings,

Exhibit A

video or audio tapes, electronically stored information in any form, materials, oral or written testimony, answers to interrogatories, responses to requests for admission, deposition testimony, deposition transcripts and exhibits, and other responses to requests for information or any tangible thing, produced by a Party or non-party in this Action.

The designation of material or information as "Confidential" under this Order also includes any information copied or extracted from the designated material or information as well as copies, excerpts, summaries, or compilations thereof. By designating any material as Confidential, counsel producing such material is representing to the Court that to the best of his or her knowledge, information, and belief the material is entitled to confidentiality under Fed. R. Civ. P 26 and the terms of this Order.

i. "Counsel of Record" means (i) counsel who appear on the pleadings as counsel for a Party in an Action, (ii) other attorneys at the same law firm who are working on that Action, including partners, associates, and employees of such counsel to whom it is reasonably necessary to disclose the information for this Litigation, including supporting personnel employed by the attorneys, such as paralegals, translators, legal secretaries, and legal clerks, and (iii) independent legal translators retained to translate in connection with this Action, or independent court reporters retained to record and transcribe testimony in connection with this Action. "Counsel of Record" shall also include (i) Plaintiff's counsel of record in other actions naming a Producing Party Defendant in substantially similar litigation who are subject to this Order or to an Order in their case substantially identical to this Order, (ii) counsel of record for a Defendant in other actions naming that Defendant in substantially similar

- 4 -

Exhibit A

litigation who are subject to this Order or to an Order in their case substantially identical to this Order, and (iii) Plaintiffs' Liaison Counsel, Plaintiffs' Lead Counsel or any attorney designated to a Plaintiffs' steering or leadership committee by this Court.

2.    Scope:    This Protective Order applies to all Designated Confidential Information, and also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof.

3.    Categories and Designation of Confidential Information: Pursuant to this Court's Standing Order regarding Protective Orders, documents in the following categories may be designated as Confidential:

a.    Plaintiffs' Designations: Plaintiffs may produce information that includes personal information of the Plaintiffs, including all medical records, work history and personal information (e.g. Social Security Numbers);

b.    Defendants' Designations: Defendants may produce information that includes confidential strategic marketing documents; research, development, regulatory, and commercial information; safety-related documents; product formula information; trade secrets; correspondence with regulatory bodies; research, technical, commercial or financial information that has been maintained as confidential; internal sales documents; and other non-public sensitive or proprietary information.

4.    Purpose is to Facilitate the Exchange of Information:    This Protective Order is entered solely for the purpose of facilitating the exchange of information between the Parties to this Action without involving the Court unnecessarily in this process.    Nothing in this Protective Order, nor the production of any documents or disclosure of any information pursuant to this Order, shall be deemed to have the effect

Exhibit A

of (a) an admission or waiver, including waiver under the Federal Rules of Evidence or applicable Local Rules, by any Party or other subscriber to this Order; (b) altering the confidentiality of any such information; or (c) altering any existing obligation of any Party or other subscriber, or the absence of such obligation.

5.  Use of Designated Confidential Information by Any Counsel of Record:  All Designated Confidential Information and its contents, as well as copies, summaries, notes, memoranda, and computer databases relating thereto, shall be and remain confidential and shall not be disclosed in any fashion, except as set forth below in Paragraph 9.  All Designated Confidential Information shall be used solely for the purposes of discovery and/or prosecution of the claims and defenses asserted in the Testosterone Litigation.

Persons having knowledge of Confidential Information by virtue of their participation in the Litigation, or by virtue of obtaining any documents or other Confidential Information produced or disclosed in the Litigation pursuant to this Order, shall use that Confidential Information only in connection with cases pending in this MDL proceeding, cases pending in a state court where the attorney has agreed to be bound by this Order or an order in that court providing substantially similar protections as set forth herein, in Actions in the Litigation involving the same Defendant that produced the Designated Confidential Information, or with respect to federal or state regulatory requirements.

6.  Procedure for Designation of "Confidential" Information:  Confidential Information may be designated by any Producing Party as "Confidential" by placing or affixing on each page of such Document, or on the face of such thing, the legend

Exhibit A

"CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER". Moreover, a Party may designate Confidential Information produced by non-parties that contain that Party's Confidential Information as "Confidential". Interrogatory answers, responses to requests for admission, deposition transcripts and exhibits, pleadings, motions, affidavits, letters and briefs that quote, summarize, or contain materials entitled to such protection may be designated "Confidential".

7. <u>Procedure for Use of Documents Produced By One Defendant With Employees, Former Employees and/or Consultants Employed or Retained By A Different Defendant</u>: Absent the agreement of the Producing Defendant or an Order of this Court, no Confidential Information produced by a Defendant may be shown to any current or former employee or any consultant of a different Defendant, including without limitation, at the deposition of that employee, former employee or consultant. In the event that this paragraph is inconsistent with the terms of paragraph 9 of this Order, the terms of paragraph 9 shall control and the Person shall be able to be shown Confidential Information.

8. <u>Permitted Redactions:</u> Confidential documents that are produced pursuant to a valid Document Request, Deposition Notice or Subpoena shall be produced in their entirety with no internal redaction predicated on a claim or contention that a portion of the document is "irrelevant" or "nonresponsive" with the exception of information that is wholly irrelevant to this Litigation and not reasonably calculated to lead to the discovery of admissible evidence, or that is covered by the attorney client privilege, work product doctrine or is required to be redacted pursuant to federal or state statute (e.g., the Health Insurance Portability and Accountability Act of 1996 ("HIPPA")). No Party may

Exhibit A

withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the Party moves for an Order providing such special protection.

In particular, to protect against unauthorized disclosure of confidential personal information or invasion of the physician-patient privilege and/or individual privacy interests or rights, any of the Defendants may redact from Designated Discovery Materials names, street addresses, and other identifying information pertaining to: research subjects or patients; reporters of adverse events or Persons or entities identified in such reports; and other individuals or entities whose names and other identifying information are protected from disclosure by the FDA or any of the Defendants by the regulations of the Food, Drug & Cosmetics Act, including, but not limited to, 21 C.F.R. § 20.63, 21 C.F.R. § 20.1ll, 21 C.F.R. § 20.1l2, 21 C.F.R. § 50.25, 21 C.F.R. § 3l4.80 and 21 C.F.R. § 803.9, or by the regulations of the Health Insurance Portability and Accountability Act (HIPAA). Pursuant to 21 C.F.R. §§ 314.430(e) & (f) and 20.63(f), the names of any Person or Persons reporting adverse experiences of patients and the names of any patients that are not redacted shall be treated as confidential, regardless of whether the document containing such names is designated as Confidential. Except for communications between a Plaintiff and their Counsel of Record, no such Person shall be contacted, either directly or indirectly, based on the information so disclosed without the express written permission of the Producing Party. Defendants also may redact information regarding their other products unrelated to products at issue in the Testosterone Litigation.

- 8 -

Exhibit A

9.    <u>General Use of Confidential Information Designated as "Confidential"</u>:
Unless otherwise ordered by the Court or permitted in writing by the Producing Party, a
Receiving Party may disclose any information or item designated "Confidential" only to:

a.    (i) Counsel of Record in the Action as to which the material
was .produced; (ii) Plaintiffs' Counsel of Record in other Actions in the Litigation that
name the Producing Party Defendants or who have been appointed by this Court as
Plaintiffs' Liaison Counsel, Plaintiffs' Lead Counsel, or as a member of a Plaintiffs'
steering or leadership committee designated by this Court; (iii) in-house counsel for the
Defendant who are actively involved in assisting with the defense of the Defendant in
the Litigation; or (iv) any Person who prepared, received, or reviewed the Designated
Confidential Information prior to its production in the Testosterone Litigation.

b.    court officials involved in the *Testosterone Litigation* (including
Judges, court reporters, persons operating video recording equipment at depositions,
and any special master appointed by the Court or designated by the Parties).

c.    any witness testifying at a deposition in an Action, but only if (1) the
witness prepared, received, or reviewed the Designated Confidential Information prior to
its production in the Litigation, (2) is a current or former employee or consultant of the
Producing Party, or (3) is a prescribing or treating physician, nurse practitioner, or any
other medical professional who treated the plaintiff (and their respective staff)
("Healthcare Provider") in the Action in which the deposition is being taken and the
Healthcare Provider agrees to be bound by the provisions of this Order and has signed
a Confidentiality Agreement, the form of which is attached as Exhibit A. Whether a
Healthcare Provider who refuses to sign a Confidentiality Agreement can be shown

Exhibit A

Confidential Information during his or her deposition shall be the subject of a subsequent Order of this Court. Similarly, whether a Healthcare Provider who agrees to be bound by the provisions of this Order and has signed a Confidentiality Agreement may be shown Confidential Information other than during his or her deposition shall be the subject of a subsequent Order of this Court.

d. non-attorney consultants or experts retained for the purpose of assisting Counsel of Record in the Action, provided, however, that in all such cases, the individual to whom disclosure is to be made has signed a Confidentiality Agreement, the form of which is attached as Exhibit A;

e. any third-party document vendor retained by Counsel of Record in the *Testosterone Litigation*, including vendors who use and store documents based in a "cloud-based" technology; provided, however, that such vendors shall take all reasonable and necessary steps to ensure that the document storage method they use is secure and may not be accessed by individuals who are not authorized to review Confidential Information subject to this Order and who have not executed the Confidentiality Agreement described herein, and which, at a minimum, must require each individual user to have a distinct log-in and password;

f. any Person designated by the Court in the interest of justice, upon such terms as the Court may deem proper; and

g. any employees of Defendants who are involved with the receipt, review, evaluation and reporting of adverse event reports and other patient-related information to governmental and regulatory agencies to whom Defendants may be obligated to report Plaintiffs' information as well as any governmental or regulatory

Exhibit A

agencies to whom Defendants may be obligated to report such Plaintiffs' information. The disclosure and use of Confidential Plaintiffs' information permitted under this paragraph 9(g) of this Order shall continue for as long as Defendants have an obligation to maintain, review, evaluate and disclose such Plaintiffs' information regardless of whether that Plaintiff's claims or the Litigation have been concluded. No such disclosure by Defendants' employees shall constitute a waiver of the Plaintiffs' Confidential Information or in any way expand upon any Federal or State statutory or regulatory reporting requirements.

        h.    Court filings or submissions, provided that any Designated Confidential Information is filed and or submitted under seal. Given the complexity of these cases coupled with the scope of the anticipated production, the requirements set forth in Local Rule 26.2, along with the Court's Standing Order governing the filing of Confidential Documents, are waived, and Designated Confidential material will be filed or submitted under seal without the need for a prior motion to seal.

      Nothing in this provision shall require any Party to disclose the identity of any expert prior to those dates set forth in the Court's Scheduling Order regarding production of expert disclosures.

      10.    <u>Disclosure of Confidential Information to Outside Consultants or Experts:</u> Before disclosing Confidential Information to any outside consultant or expert, the Party wishing to make such disclosure shall use diligent efforts to determine whether the Person is currently employed by or currently consults with any other Party in the *Testosterone Litigation* or any other commercial entity engaged in manufacture,

- 11 -

Exhibit A

marketing or sale regarding testosterone therapy of any kind and ensure that such consultant or expert will comply with the terms of this Order.

11.     Jurisdiction of this Court to Hear Disputes:  The Parties and each person executing the Confidentiality Agreement submit to the jurisdiction of this Court for the purposes of enforcement of this Order, either prior to or following the completion of this Action.  Jurisdiction of this Action is to be retained by this Court after final determination for purposes of enabling any Party or Persons affected by this Order to apply to the Court at any time for such direction or further decree as may be appropriate for the construction or enforcement of this Order or for such additional relief as may become appropriate.

12.     Attendance at Depositions:  Only the Parties and Persons described in Paragraph 9, including the court reporter and the witness, shall be present at depositions.  Portions of depositions shall be deemed Confidential only if designated as such when the deposition is taken or within thirty (30) business days after receipt of the transcript.  Such designation shall be specific as to the portions to be protected. Deposition exhibits that are Designated as Confidential Information pursuant to this Protective Order will continue to be protected without further designation being required. The continued protection of such documents will not be dependent upon the transcript being designated as protected.  Until the expiration of the 30-day period, the entire deposition will be treated as Confidential.

13.     Challenges to "Confidential" Designations:  Issuance of this Protective Order will not be given binding effect as a determination of good cause for Rule 26(c) purposes.  If a Party moves for relief from the Protective Order's limitations, the Court

- 12 -

Exhibit A

will engage in an appropriate balancing of the interests between privacy and public access to make a new determination of good cause in light of the facts then before the Court. A Party shall not be obligated to challenge the propriety of a "Confidential" designation at the time made, and failure to do so shall not preclude a subsequent challenge thereto. Prior to any motion regarding the designation of Confidential Information, in the event that a Party disagrees with the Producing Party's designation of any document or information as "Confidential" under this Protective Order, the objecting Party shall advise counsel for the Producing Party, in writing, of the objection and identify the document or item with sufficient specificity to permit identification. Within fourteen (14) days of receiving the objection, the Parties shall confer to determine whether the Producing Party will change the designation. If the dispute cannot be resolved between the Parties within the fourteen (14) day meet and confer period, the Receiving Party (i.e. the Party challenging the Confidential designation) may file a motion to compel de-designation. All challenged Designated Confidential documents and information, including all references to the substance of any such Designated Confidential material shall be filed under seal as provided in Paragraph 9(h) herein. During the pendency of any motion to compel, the designated document or item shall continue to be treated as Designated Confidential Information subject to the provisions of this Order. On the hearing of any motion to compel, the burden shall be on the Producing Party who made the designation to establish that the designated document or item should be deemed Confidential. Because the Receiving Party is required to bring the motion challenging a designation and the Producing Party bears the burden of proof in connection with such a motion, the Receiving Party shall be

Exhibit A

permitted to file a reply brief in connection with all such challenges to a designation of Confidentiality.

14.     Requirement for a Privilege Log:  There is no duty to produce privileged documents or information. For any document the Producing Party designates as subject to a claim of privilege or work-product protection that is responsive to a valid Document Request, the Producing Party shall supply a Privilege Log.  The Privilege Log shall be supplied within sixty (60) days of producing a completed Custodial File.  For non-custodial documents, the Producing Party shall supply Privilege Logs on a rolling basis within sixty (60) days of production.  The privilege log shall identify documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, will enable the other Parties to assess the applicability of the privilege or protection.  The Privilege Log shall be produced in a manner that is set forth in the attached Exhibit B ("Privilege Log").  The Parties shall meet and confer concerning specific procedures to be used related to production of a Privilege Log.

15.     Limits to Privilege Log Content:  To make document production more efficient, the Parties shall use the following protocol with respect to handling responsive documents that may include privileged information.

a.     No Party need list on a privilege log documents generated after the filing of the initial complaint relating to testosterone therapy commenced or naming that Party unless such documents fall within the scope of agreed or Court-Ordered discovery.

b.     An email thread may be logged in a single entry.

- 14 -

Exhibit A

c.    The following types of documents are deemed presumptively privileged and need not be disclosed on the privilege log:

(1)    communication between out-side counsel and in-house counsel;

(2)    internal communication: (i) within a law firm, (ii) between a law firm or any court approved leadership structure including, but not limited to Co-Lead Counsel, Plaintiffs' Executive Committee or Plaintiffs' Steering Committee; (iii) within and among lawyers representing Defendants in the Testosterone Litigation; or (iv) within a legal department of a corporation or of another organization; and

(3)    communication between a Plaintiff and their lawyer, law firm or any employee of a Court Appointed leadership firm.

16.    <u>Challenges to Privilege:</u>  After the receipt of a privilege log, any Party may dispute a claim of privilege; however, prior to any submission to the Court for an *in camera* review, the Party disputing a claim of privilege shall provide in writing the identification of the documents for which it questions the claim of privilege and the reasons (including legal support) for its assertion that the documents are not privileged. Within twenty (20) business days of receiving notice of the dispute, the Party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege (including legal support).  The Parties will then meet and confer in good faith as to the claims of privilege.  If agreement cannot be met after thirty days, any Party may thereafter submit the Discovery Material under seal to the Court for a determination as to privilege.  Upon the agreement of the Parties or for good cause shown to the Court, the time-frame in this paragraph may be shortened.

Exhibit A

17.    <u>Inadvertent Production of "Confidential" or Privileged Documents</u>:    If a Producing Party inadvertently or unintentionally produces a document or information without marking it as Designated Confidential Information or marking it with the incorrect Confidentiality designation, the Producing Party shall, within twenty (20) business days of discovering the inadvertent production, give notice to the Receiving Party in writing, and thereafter the Receiving Party shall treat the document according to its new designation.    Inadvertent or unintentional disclosure shall not be deemed a waiver in whole or in part of the Producing Party's claim of restriction either as to specific documents and information disclosed or on the same or related subject matter.

18.    <u>Challenges to Inadvertent Production of "Confidential" or "Privileged" Material</u>.    If a Producing Party inadvertently or unintentionally produces any document(s) or information the Producing Party determines was entitled to a claim of privilege or protection from discovery (including but not limited to attorney-client privilege, work product doctrine, and other privilege created by federal or state statute or regulation), the Producing Party shall, within twenty (20) business days of discovering the inadvertent production, give notice to the Receiving Party in writing of the Producing Party's claim of privilege or protection from discovery by sending that writing to MDL Plaintiffs' Co-Lead Counsel.    Plaintiffs' Co-Lead Counsel shall have the inadvertently produced documents segregated in the PSC's document review database so that the documents cannot be seen by others (including but not limited to a quarantine of those documents within that database) until such time that either an agreement about the document(s) has been reached by the Parties or the Court has made a ruling about the claim of privilege.    Plaintiffs' Co-Lead Counsel shall be able to review the document(s)

Exhibit A

at issue and share that document(s) with up to three members of the Plaintiffs' Executive Committee for the purpose of determining whether to assert a challenge to the Producing Party's claim of privilege consistent with the terms of this provision.

Inadvertent or unintentional production may not be deemed a waiver in whole or in part of the Producing Party's claim of privilege or immunity from discovery either as to specific documents and information disclosed or on the same or related subject matter based on the facts constituting the inadvertent production. This provision is, and shall be construed as, an Order under Rule 502(d) of the Federal Rules of Evidence. Accordingly, as is explicitly set forth in Rule 502(d), a Party's production of documents, whether inadvertent or intentional, is not a waiver of any privilege or protection "in any other federal or state proceeding." Fed. R. Evid. 502(d). The fact of the inadvertent production itself cannot be the basis for a motion to compel. In the event the Parties disagree over any claim of privilege from discovery, the Receiving Party may challenge the claim of privilege and move the Court for an Order related to the challenged document following a conference between the Parties. During the pendency of the dispute and pendency of a motion by the Receiving Party, the Receiving Party may retain possession of the inadvertently produced document(s) pending resolution by the Court, but shall segregate the document(s) in the PSC's document review database (and shall not otherwise transmit or share them outside the database, other than as described above) and not use them pending resolution of the motion. If the Receiving Party's motion is denied, the Receiving Party shall promptly return the original and all copies to the Producing Party.

Exhibit A

19.    <u>Subpoenas</u>:  If another court or an administrative agency subpoenas or orders production of Designated Confidential Information which a Party has obtained under the terms of this Order, or if a Party otherwise is legally obligated to produce such Designated Confidential Information, such Party shall, within five days, give written notice to the Party or other Person who designated the document as Confidential of such subpoena, order or other legal process.  If the Producing Party seeks to quash or modify such process or discovery request in accordance with the applicable rules and before the Receiving Party is otherwise required to comply with such process or discovery request, the Receiving Party shall withhold production or disclosure of such Designated Confidential Information during the pendency of the Producing Party's application to quash or modify such process or discovery request.

20.    <u>Unauthorized Disclosure of Designated Confidential Information</u>:  If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Designated Confidential Information to any Person or in any circumstance not authorized under this Order, including but not limited to attorney-client privilege, work product immunity, and immunities created by federal or state statute or regulation, including, without limitation, the FDCA and HIPAA and regulations related thereto, the Receiving Party must immediately (a) notify in writing the Producing Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Designated Confidential Information, (c) inform the Person or Persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such Person or Persons to execute the Confidentiality Agreement that is attached hereto as Exhibit A.  The Receiving Party shall keep the Producing Party apprised of its remedial efforts under (b) through (d).

- 18 -

Exhibit A

21.  <u>No Limitations on Party's Use of its Own Information</u>:  This Protective Order shall not limit a Producing Party's use of its own Designated Confidential Information.

22.  <u>Modification Permitted</u>:  Nothing in this Protective Order shall prevent any Party or other Person from seeking modification of this Protective Order or from objecting to discovery that it believes to be otherwise improper.

23.  <u>Destruction of Documents Following Conclusion of Litigation</u>:  Unless otherwise agreed or order, this Order shall remain in full force and effect after dismissal or entry of final judgment not subject to further appeal.  Except as provided under Paragraph 9(g) for use in connection with regulatory reporting requirements, within 60 days after dismissal or entry of final judgment not subject to further appeal, all Designated Confidential Information, including copies of same, shall be returned to the Producing Party unless: (1) the document has been offered into evidence or file without restriction as to its disclosure; (2) the Parties agree to destruction to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations or other mental impressions of the Receiving Party, that the Receiving Party  elects to destroy the documents and certifies to the Producing Party that has done so. Notwithstanding the above requirements, all Counsel of Record in the *Testosterone Litigation* may retain (1) attorney work product that refers or relates to designated Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential Information and (2) one complete set of all documents filed with the Court, including those filed under seal, as required by any errors and omissions carrier or to defend against any allegation of professional

Exhibit A

negligence. Any retained Confidential Information shall continue to be protected by this Order. The Clerk of this Court may return to Counsel of Record or destroy any Designated Confidential Information in its possession.

24. <u>Publicly Available Information</u>. Nothing in this Order shall preclude the disclosure by any Party of publicly available documents or information.

25. <u>Third-Party Disclosure</u>. Nothing in this Order shall in any way require any Receiving Party to indemnify or hold harmless the Producing Party for the disclosure of Confidential Information, materials or documents by a third-party.

SO ORDERED the 1st day of September, 2014.

_____
Hon. Matthew F. Kennelly
Judge of the United States District Court

- 20 -

Exhibit A

# EXHIBIT A

### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: TESTOSTERONE | ) | |
| REPLACEMENT THERAPY | ) | Case No. 14 C 1748 |
| PRODUCTS LIABILITY LITIGATION | ) | MDL No. 2545 |
| | ) | |
| This document relates to all cases | ) | Honorable Matthew F. |
| Kennelly | | |

### ACKNOWLEDGMENT TO CONFIDENTIALITY AGREEMENT

1.     I acknowledge that I am about to receive Confidential Information supplied in the above-captioned matter.

2.     I have read the Protective Order that has been entered by the Court as CMO # 8 in MDL 2545 dated August __, 2014 ("Protective Order") governing the restricted use of Confidential Information produced in the above-captioned litigation, a copy of which Protective Order has been provided to me.  I understand the Protective Order and agree to abide by it.

3.     I will not utilize any Designated Confidential Information or other information subject to the Protective Order for any purpose other than with respect to Actions in the *Testosterone Litigation* naming [DEFENDANT NAME] or in connection with federal or state regulatory requirements.  I further affirm that I will not reveal the Confidential Information to, nor discuss it with, anyone, except in accordance with the terms of the Protective Order.

4.     I understand that a violation of the Protective Order by unauthorized disclosures of Designated Confidential Information or their substance may subject me to sanctions by the Court for contempt of court and that the Parties may assert other remedies against me.

Exhibit A

EXHIBIT A

5.      I submit to the jurisdiction of the United States District Court for the

Northern District of Illinois, as necessary to enforce the provisions of the Protective

Order.


Dated:_____

_____

Signature

_____

Printed Name

_____

Address

_____

City, State, Zip

_____

Telephone Number

Exhibit A

THOMAS C. CARTER
JUDITH K. CARTER
12430 ADAMS RIDGE LN
HUMBLE TX 77346
832-794-8283

1465
35-8283/3130

2/28/17
Date

Pay to the
Order of _Mohit Khera_

$ 50.25

_Fifty & 25/100_ Dollars

InvesTex
CREDIT UNION
Making Life Better

8404 FM 1960 Bypass West Rd
Humble, TX 77338
(281)449-0109
www.investexcu.org

LONE STAR DIAMOND

Photo
Safe
Deposit™
Details on back

For _Witness Fee_

_Judi Carter_ MP

⑆313082838⑆000402346 3⑈ 1465

Harland Clarke

Exhibit A